## John Brown v. The State.

In the case of an aggravated assault, the jury have a discretion, within certain prescribed limits, to assess or fix the punishment, (Hart. Dig., Art. 554.) The Court cannot control their discretion in that respect, even though it should appear that it was not judiciously exercised ; which, however, in the present case, we see no cause to apprehend.

Where the witness came up during an affray, or excitement succeeding an affray, with a picket in his hand, and told the crowd that, if they would put Brown (the defendant) down and paddle him, he would pay fifty dol-

lars and expenses; and then said to Brown that, if no one else would do it, he would whip him himself; whereupon Brown said, Then you are the man I am after; God damn, I have got you now; God damn, I will kill you; and thereupon threw an axe, which he had held in his hand, at the witness; and the latter threw the axe back at Brown with violence; whereupon Brown took up the axe and pursued the witness, who ran until Brown was about to overtake him, when he turned, and Brown struck at him with the axe, missing him with the poll and hitting him with the handle: the jury having found the defendant guilty of an aggravated assault, it was held that the verdict was sustained by the evidence.

See this case for circumstances under which, where the defendant had been convicted of an aggravated assault, the Court held that certain newly discovered evidence was wholly immaterial; but that if the testimony could have been of any avail to the accused, it was owing to his own negligence, that he did not have the benefit of it.

It is scarcely necessary to say, that the mere fact that there was a witness absent, whose testimony might be obtained upon another trial, was no ground for granting a new trial.

Appeal from Brazoria. Tried before the Hon. Nelson H. Munger.

Indictment of the appellant for an assault upon Wiley Pollard with intent to kill, and verdict of guilty of an aggravated assault, and punishment assessed at six months imprisonment in the county jail. Motion for new trial, on the ground that the verdict was excessive and unwarranted by the evidence; and on the ground of newly discovered evidence.

The testimony on the trial was as follows: R. J. W. Reel, for the State, sworn: Brown was quarreling with a Mexican, for killing his dog, that had bitten the Mexican. Brown followed the Mexican through witness's kitchen; Brown had an axe; could not find the Mexican; went off and mounted a horse and got his gun. One Burger told Brown he should not hurt any body there. Several persons gathered around Brown; some women came about. Pollard came down from his shop, picking up a picket as he came along. Pollard said something to Brown; Brown threw an axe at Pollard. Pollard dropped the picket and threw the axe back at Brown. Brown seized

the axe and started at Pollard. Pollard ran. Brown was overtaking him, when Pollard turned. Brown struck at Pollard ; missed him with the poll of the axe, striking him with the handle. Both fell. Pollard got on Brown and beat him. Brown's daughter ran up and thumped Pollard on his back.

Jordan Tyler, for the State, testified as follows : Heard a quarrel'between Brown and Mexican who killed his dog ; several persons gathered round Brown ; some women about ; witness was in Pollard's shop, about fifty yards off ; witness and Pollard looked out and saw the fuss. Pollard left his shop and went to Gregory Simm's shop ; from there he went down to where the crowd were gathered around Brown. (Balance same as previous witness, and further.) The picket was about four feet long. The axe when thrown back at Brown by Pollard, knocked eight or ten pickets off the fence ; the axe was new and heavy. Witness thought Brown had enough. Some others standing by did not think Brown had enough. Pollard wanted to get off Brown ; seemed about getting off. Witness and one or two others pulled Pollard off. Brown was badly beaten. Brown's wife and daughter were present.

Wiley Pollard, for the State, sworn. Was in his shop ; heard Brown quarrelling with the Mexican ; several persons were gathered round ; went from his own shop to Gregory Simm's shop to see about the stocking of some ploughs ; from there went down to where Brown was making the fuss. Brown was using indecent and vulgar language in hearing of witness's wife and other women. As witness walked down into the crowd, he picked up a picket or pulled it off the fence. Witness told the crowd that if they would put Brown down and paddle him, witness would pay fifty dollars and expenses. Witness then said to Brown, that if no one else would do it, he would whip him himself. Brown said, Then you are the man I am after. God damn, I have got you now. God damn, I will kill you. He then threw the axe at witness. Witness threw it back, knocking off some pickets. Brown picked up the axe and

started after witness. Witness ran, Brown followed, and was about to catch him, when he turned. Brown struck with the axe, hitting witness with the handle across the face or shoulders. Brown and witness fell. Witness turned Brown as he fell; got on him; punched out both his eyes; choked the wind out of him, and beat him until the blood ran from his nose and ears. Brown then said if witness would let him up, he would go home. Witness let him go. As Brown rose, witness hit him another back handed lick, and capsized him again. Witness then let Brown up.

The foregoing was all the testimony in the case.

The following affidavits were submitted in support of the motion for a new trial:

Before me, B. C. Jones, Clerk of the District Court of Brazoria County, personally appeared John Brown, to me known as defendant in the above entitled cause, who, being by me duly sworn, says, that since the trial of the above entitled cause, he has discovered that he could have proven by Charles Stringfellow, of the town of Brazoria, that a few moments before the affray with Pollard, for which this defendant is indicted, and while this defendant was quarrelling with the Mexican who had killed his dog, the said Mexican drew his gun on this defendant, and about the same time one Burger asked said Stringfellow for fresh caps to put on his pistol; and that said Stringfellow saw said Burger following this defendant around the lot where the quarrel transpired; and that this defendant had no gun during the said quarrel, and that said Stringfellow believed, from the conduct of said Burger and others, that there was an intention to beat or kill this defendant.

This affiant further says, that during the excitement growing out of the quarrel with the Mexican, the said Stringfellow told this affiant, that if he was not careful he would be killed; that by said Stringfellow's words, the impression was made on the mind of this affiant, that his life was in danger; but that he

did not know until since the trial of this cause, the facts which he could prove by said Stringfellow, and did not communicate the words of said Stringfellow to his attorneys. He says that before the trial of said cause, he conversed with said String-fellow, with a view to ascertain what he could prove by him, but that said Stringfellow appeared unwilling to state what he knew about this case, and did not communicate the above facts to this affiant until since the trial.

This defendant further says, that he has learned since the trial of this cause, that William Russell, who now resides in the county of Fayette, in this State, was present during the whole of the affray with Pollard, and saw all that occur-red ; that he believes he will be able to prove by the testi-mony of said Russell, that there was a combination on the part of several other persons and the said Pollard, to beat this affi-ant. He says that he asked said Russell if he was not present during the said affray, and that said Russell refused to talk with this affiant upon the subject.

Affiant further says, that most of those present during said affray are his personal enemies and will not state the facts of the case ; and that said Russell is disinterested and will state the facts of the case as they occurred. And affiant says that he seeks a new trial only for the purpose of presenting the truth of his case to the Court. (Signed and sworn.)

I will state upon oath the facts which the affiant, John Brown, says in the foregoing affidavit he believes he can prove by me. (Signed and sworn by Stringfellow.)

I can state upon oath, that William Russell was present and saw the affray between John Brown and Wiley Pollard, for which said Brown has been indicted and tried. (Signed and sworn by Philip Dargan.)

*J. H. Bell and Ballinger & Jack*, for appellant. I. Pol-lard's conduct amounted to a positive attack, and not " mere words." There were threatening words ; an atti-

tude of violence, and a bludgeon,—all indicating to Brown an immediate onslaught, which he was justified in repelling with force. The law of self-protection justly applies.

II. As to what entitles a party to a new trial, see Watts v. Johnson and others, 4 Tex. R. 311.

*Attorney-General*, for appellee.

WHEELER, J. In a case of an aggravated assault, the jury have a discretion, within certain prescribed limits, to assess, or fix, the punishment. (Hart. Dig. Art. 554.) The Court cannot control their discretion in that respect, even though it should appear that it was not judiciously exercised; which, however, in the present case, we see no cause to apprehend. The jury must evidently have taken the most favorable view of the case, possible for the accused, when they found him guilty only of an aggravated assault, instead of an assault with intent to murder.

The application for a new trial was manifestly devoid of merits. What had previously occurred between the accused and others, was no justification or palliation of his crime. That he may have been offended by others, did not justify or extenuate the assault; especially upon one who had not given that offence.

The newly discovered evidence was wholly immaterial. But if the testimony of the witness could have been of any avail to the accused, it was owing to his own negligence in not examining him as a witness, that he did not have the benefit of it.

It is scarcely necessary to say, that the mere fact that there was a witness absent, whose testimony might be obtained upon another trial, was no ground for granting a new trial. If "most of those present" were, as he says, inimical to him, it does not follow that all present were so blinded by their prejudices against him, that they could not tell the truth; nor does he pretend to say that the witnesses who testified upon

the trial did not testify truly.   If he could have proved all he
proposes to prove upon another trial, it would afford him no
ground of justification or excuse.   The conviction was well
warranted by the evidence, and the court did not err in re-
fusing a new trial.   The judgment is affirmed.

Judgment affirmed.